PHILIP M. HYMANSON, ESQ.
Nevada Bar No. 2253
hymansonp@gtlaw.com
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
gutierrezjo@gtlaw.com
**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DAWN MATLOCK, | CASE NO.: CV-S-04-0051-KJD-RJJ |
| Plaintiff, | |
| vs. | **DEFENDANT'S RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW** |
| GREYHOUND LINES, INC., | |
| Defendant. | |

COMES NOW, Defendant GREYHOUND LINES, INC., by and through its attorneys of record, the law firm GREENBERG TRAURIG, LLP, and hereby files its renewed motions for judgment as a matter of law. These motions are made pursuant to FRCP 50(b) and based on the

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

*LV 418,763,184v1 4-17-09*

following memorandum of points and authorities, the pleadings and papers on file herein and any oral argument the district court may entertain.

DATED this 17th day of April, 2009.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By: ___/s/ Joseph Gutierrez___
PHILIP M. HYMANSON, ESQ.
Nevada Bar No. 2253
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
*Attorneys for Defendants*

2

*LV 418,763,184v1 4-17-09*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Trial of this matter commenced on March 30, 2009. On April 2, 2009, immediately after the close of Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law on the following issues: (1) Plaintiff's past medical damages; (2) Plaintiff's future medical damages; and (3) Plaintiff's claimed medical damages on behalf of her children. The district court denied these motions. Defendant now renews its motions for judgment as a matter of law pursuant to FRCP 50(b).

## II. LEGAL ARGUMENT

Federal Rule of Civil Procedure 50(a) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> (A) resolve the issue against the party; and
> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

FRCP 50(a)(1)(A)-(B).

On April 2, 2009, the district court denied Defendant's motions for judgment as a matter of law. The jury returned its verdict on April 4, 2009. Defendant now renews its motions for judgment as a matter of law pursuant to FRCP 50(b), which provides:

> If the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment – or if the motion addressed a jury issue not decided by a verdict, no later than 10 days after the jury was discharged – the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. In ruling on the renewed motion, the court may:
> (1) allow judgment on the verdict, if the jury returned a verdict;
> (2) order a new trial; or
> (3) direct the entry of judgment as a matter of law.

FRCP 50(b)(1)-(3).

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

3

"The party seeking damages has the burden of proving both the fact of damages and the amount thereof." *Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co., Inc.*, 105 Nev. 855, 857, 784 P.2d 954, 955-56 (1989) (citing *Kelly Broadcasting v. Sovereign Broadcast,* 96 Nev. 188, 193-194, 606 P.2d 1089, 1093 (1980); *Alper v. Stillings,* 80 Nev. 84, 86-87, 389 P.2d 239, 240 (1964)). The law requires that "a party seeking damages has the burden of providing the court with an evidentiary basis upon which it may properly determine the amount of damages." *Frantz v. Johnson*, 116 Nev. 455, 469-70, 999 P.2d 351, 360 (2000) (citing *Mort Wallin,* 105 Nev. at 857, 784 P.2d at 955). Indeed, a plaintiff "must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award." *Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2001) (quoting *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)). Thus, "summary judgment is appropriate where [a plaintiff has] no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages." *Id.* (citing *Rickards v. Canine Eye Registration Found., Inc.*, 704 F.2d 1449, 1452 (9th Cir. 1983). Although damages need not be proved with mathematical exactitude, it is an abuse of discretion for an expert to give an opinion based on either speculation or facts beyond the expert's knowledge. *See Frantz*, 116 Nev. at 469-70, 999 P.2d at 360 (citing *Mort Wallin*, 105 Nev. at 857, 784 P.2d at 955; *Freeman v. Davidson,* 105 Nev. 13, 16, 768 P.2d 885, 887 (1989); *Gramanz v. T-Shirts and Souvenirs, Inc.*, 111 Nev. 478, 485, 894 P.2d 342, 347 (1995)). "The court cannot assume the role of an expert and thereby relieve plaintiff of the need to present evidence in support of its claim. Evidence essential to sustain a damages award must be in the record and available for meaningful appellate review." *Mort Wallin*, 105 Nev. at 857, 784 P.2d at 956.

Here, on April 2, 2009, Defendant moved for judgment as a matter of law on Plaintiff's claims for past and future damages, as well as the claimed damages on behalf of the children. The district court denied these motions and the jury returned a verdict on April 4, 2009. Because Plaintiff failed to put forth a legally sufficient evidentiary basis to sustain the award of damages in the verdict, Defendant renews its motion and requests that the district court direct the entry of judgment in favor of Defendant as a matter of law pursuant to FRCP 50(b).

4

*LV 418,763,184v1 4-17-09*

### A. TESTIMONY OF LINDA GRAHAM, R.N.

It is undisputed that Linda Graham, R.N., was retained by Plaintiff and designated by Plaintiff as an expert to testify regarding "Dawn Matlock's future health care needs" and "cost estimates of future care and health services." *See* Pl.'s Fifteenth Supplemental Disclosures of Documents and List of Witnesses Pursuant to FRCP 26.1, a copy of which is attached hereto as **Exhibit "A."** At no time did Plaintiff ever designate Ms. Graham to testify regarding past damages.

Nevertheless, over the objection of Defendant, Plaintiff used Ms. Graham at trial to testify that Plaintiff's past medical treatment was reasonable and necessary, that said medical treatment was causally related to the bus accident to a reasonable degree of medical probability, and that the costs associated with said treatment were reasonable and customary. This despite Plaintiff never designating Ms. Graham to testify to anything pertaining to past damages and Ms. Graham's deposition testimony that she did not review a majority of Plaintiff's past medical treatment.

Specifically, Ms. Graham testified during her deposition that she did not recall or had not reviewed the following medical records and reports: (1) Wendover Ambulance; (2) University of Utah Hospital; (3) Rapid City Regional Hospital; (4) Native Women's Health Care; (5) Sioux San Hospital; (6) High Plains Physical Therapy; (7) Neurological Associates and Dr. Gee; (8) Biggs-Gridley Memorial Hospital; (9) Sutter-Yuba Hospital; and (10) Rideout Memorial Hospital. *See* Deposition of Linda Graham, pp. 16-19, a copy of which is attached hereto as **Exhibit "B."** Additionally, Ms. Graham testified that she had not reviewed any diagnostic films, scans, CT scans, MRIs, myelograms or discographies. *See id.*, p. 20. Yet at trial, Plaintiff proffered and utilized Ms. Graham, over Defendant's objection, to prove up many of the medical records and treatment for which Ms. Graham was not qualified to prove up and had not even previously reviewed.

Indeed, Ms .Graham, as a registered nurse and not a treating physician, repeatedly testified in her deposition that she extensively relied upon and would even defer to treating physicians regarding Plaintiff's medical treatment and that the only items she determined herself were for homemaking and assistance support services. For example:

5

| | | |
|---|---|---|
| 1 | Q. | In other words, *you are relying on a lot of underlying physicians, doctors and experts in somewhat rendering your opinions?* |
| 2 | A. | Somewhat I am *as far as some of the medical treatment that's prescribed* for some of the categories of my report. Other categories stand alone aside. They are a house by themself. |
| 3 | | |
| 4 | | |
| | | … |
| 5 | Q. | All right. The *cause of that chronic pain and depression you would defer to the medical doctors* in this case, would you not? |
| 6 | | |
| 7 | A. | Well, *the records that I reviewed* and the depositions support the fact that the pain, the chronic pain is from the accident that took place, the bus accident, and subsequently the chronic pain has led to depression. |
| 8 | | |
| 9 | Q. | Right. *And if that's their opinions, you as a nurse would have to rely on those doctors' opinions?* |
| | A. | Yes. |
| 10 | | … |
| 11 | Q. | All right. Let's just go to the "Purpose." All right. And I've already discussed this. It says the report to *assess the health care needs, and I've already asked you about isn't that for the doctor to state, and we are going to go through what the doctors are required to state is necessary and what you may be able to testify that's necessary?* |
| 12 | | |
| 13 | | |
| 14 | A. | *Correct.* |
| | | … |
| 15 | Q. | Right. *And you are not here to render any opinions what specific neck injury was or wasn't caused by the bus accident, are you?* |
| 16 | | |
| 17 | A. | No. |
| | | … |
| 18 | Q. | All right. And so *if some of the opinions are not necessarily true* with regards to Dr. McKenna's report, some of *your estimated yearly costs could be different?* |
| 19 | A. | *If Dr. McKenna would change his opinion. But it's my understanding that, you know, his opinion of what Dawn Matlock requires and needs is his opinion.* |
| 20 | | |
| | | … |
| 21 | Q. | Okay. And this – where did you get these – *are these costs based upon Minnesota or South Dakota?* |
| 22 | A. | *They are based on information from Dr. McKenna.* And I believe that they are South Dakota prices. |
| 23 | Q. | All right. *Well, isn't Dr. McKenna, isn't he in Nevada?* |
| | A. | *Yes.* |
| 24 | Q. | *Isn't it possible that those could be the reasonable and customary fees of Nevada and not South Dakota?* |
| 25 | A. | *That could be.* |
| | | … |
| 26 | Q. | *With regard to physician recommendations, how do you treat those for purposes of preparing a life care plan?* |
| 27 | A. | Well, *I do take the physicians' recommendations into account.* And in this case – sometimes doctors are very specific and sometimes they're not. *In this case, the pain* |
| 28 | | |

6

| | | |
|---|---|---|
|1| |***specialist has been very specific in dealing with what he feels is appropriate to treat Dawn Matlock and I incorporated his opinions and the cost of those services into my report.***|
|2| | |
|3|Q.|And with respect to the part of your report that deals with ***homemaking or assistive support services, those are needs that you determined on your own and then made provisions for in your report?***|
|4| | |
|5|A.|***Yes.***|

*See id.*, pp. 21, 24-25, 29-30, 34, 47-49, 57 (emphasis added).

      At trial, Ms. Graham testified that after graduating from nursing school, she worked at Saint Joseph's Hospital in St. Paul, Minnesota and "kind of just floated to different areas where they needed staff members." *See* Reporter's Partial Transcript of Jury Trial, Day 3, April 1. 2009, P.M. Session, p. 11, a copy of which is attached hereto as **Exhibit "C."** Ms. Graham did not obtain a specialty until she left Saint Joseph's and "started to focus in on pretty much what he been my primary career, and that has been in home care." *See id.* Ms. Graham described "home care" as "care that is provided to somebody in their home, because I think most of us know that nobody really wants to go to a nursing home when they start to get elderly, or any kind of institution, if they're ill, or have some kind of disability." *See id.*, p. 12. Ms. Graham's experience and expertise is and remains limited to home health care. Ms. Graham cannot, under any circumstances, provide expert testimony that Plaintiff's past medical treatment, including multiple surgeries and diagnostic testing, are or were necessary to reasonable degree of medical probability. Similarly, Ms. Graham is not qualified to testify regarding the costs of said treatment to a reasonable degree of medical probability.

      Indeed, Ms. Graham admitted during trial that at the time of her expert report, she "had done research regarding the costs of home care services in the State of South Dakota, and that is what is reflected in [her] report." *See id.*, p. 18. Ms. Graham further testified that she is not a doctor and cannot recommend surgery. *See id.*, p. 19. Finally, after voir dire, Plaintiff offered Ms. Graham as an expert and the district court specifically qualified Ms. Graham "to render an expert opinion in the areas of home health care and whatever costs of medical services she has researched." *See id.*, pp. 23-24.

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

7

1  Ms. Graham then testified that she had prepared a supplemental report on the eve of trial in
2  which she greatly expanded and altered the scope of her anticipated trial testimony. Specifically,
3  Ms. Graham testified that she "would be talking about the usual and customary rate of charges that
4  have occurred," which was *not* mentioned in Ms. Graham's original report nor was this
5  information located anywhere in Plaintiff's expert disclosures. *See id.*, p. 40; *compare* Ex. "A"
6  (Pl.'s Fifteenth Supplemental Disclosures of Documents and List of Witnesses Pursuant to FRCP
7  26.1) and Ex. "B" (Linda Graham Depo.).

8  Ms. Graham's report and Plaintiff's expert disclosures also failed to mention anything
9  pertaining to Heather and Hailee Matlock. However, on the eve of trial, Plaintiff submitted the
10 children's medical bills to Ms. Graham for her review in order to prove them up at trial.

> Q. Okay. And in discussing the medical records for Heather and Hailee, are those mentioned in your report?
> A. No.
> Q. Why not?
> A. Because this report is for Dawn Matlock.
> Q. When were you asked to formulate an opinion as to the medical bills of Heather and Hailee Matlock?
> A. I don't recall specifically reviewing many records regarding them. I reviewed all the bills that were submitted to me. *So I would say probably sometime within the last week.*
> Q. Okay. So *within the last week, counsel asked you to review the medical bills of Heather and Hailee Matlock?*
> A. *All the bills that were sent to me, yes.*
> Q. *When were those bills sent to you?*
> A. *Sometime within since the beginning of March.*
> Q. Okay. And what was specifically asked of you to do with these bills?
> A. Just what I did: Review them, correlate them to the records, make sure that they are reasonable and usual and customary charges.
> Q. *Were you asked to formulate a report?*
> A. *No.*
> Q. *You were asked to come to trial today and testify about stuff you reviewed, medical records you reviewed a month ago?*
> A. *Or that have been submitted to me throughout the last couple of years. I mean, like I said, I continuously received records and billing statements throughout these past – I mean, this has been going on for many, many years.*
> Q. Right, but you've only submitted one report back in 2006; is that correct?
> A. Yes.
> Q. *And you haven't formulated a second report?*

8

|   |   |   |
|---|---|---|
| 1 | A. | Again, a report that talks about the change in her age; so her life expectancy was shortened, which actually lowered the number that it will cost to care for her. ***And then also to note in there that I will be talking about the cost of the medical services.*** |
| 2 |   |   |
| 3 |   |   |
|   | Q. | Okay. ***When did you draft that report?*** |
| 4 | A. | ***Last week.*** |
|   |   | … |
| 5 | Q. | ***Mrs. Graham you were given records over the law few years by plaintiff's counsel.*** |
| 6 | A. | ***Yes.*** |
|   | Q. | You were asked to look at those records. ***It wasn't until the last week in which you were asked to look at those records and estimate the reasonableness of the cost of the locale of South Dakota.*** Is that my understanding? |
| 7 |   |   |
| 8 |   |   |
|   | A. | No. ***That has probably over the – since the beginning of March.*** |
| 9 |   |   |
|   | Q. | Okay. ***So since March you were asked to – this is what we want you to testify to.*** |
| 10 |   |   |
|   | A. | Yes. |
| 11 | Q. | ***And you were asked to formulate an additional report or supplement?*** |
| 12 | A. | No. ***What I was asked was to just, yeah, submit a supplement with a paragraph that says I will be doing that.*** |
| 13 |   |   |
|   | Q. | Okay. ***So that supplement*** – that second report not only had the change in the life expectancy, but ***also had this additional information as to what you would be testifying to at the time of trial; is that correct?*** |
| 14 |   |   |
| 15 |   |   |
|   | A. | Yes. |
| 16 | Q. | Okay. ***And you submitted that report to counsel?*** |
|   | A. | ***Correct.*** |
| 17 |   |   |

*See* Ex. "C" (Reporter's Partial Transcript of Jury Trial, April 1, 2009, Day 3, P.M. Session), pp. 77-80 (emphasis added).

Over the objections of Defendant, Plaintiff utilized Ms. Graham, a nurse practitioner specializing in home health care, to prove up at trial the costs of all of Plaintiff's prior medical treatment, including, but not limited to, the following: (1) emergency room treatment at the University of Utah Hospital; (2) radiological studies at the University of Utah Hospital; (3) Wendover Ambulance records; (4) multiple emergency room visits to the Rapid City Regional Hospital, including radiological studies and prescriptions medications; (5) treatment at Black Hills Regional Hospital; (6) High Plains Physical Therapy treatment; (7) neurological consultations, visits and surgery by the Spine Center of Dr. Gee and Dr. Maxwell; (8) anesthesia services by Anesthesiology Solutions; (9) unknown treatment at the Suzanne Hospital; and (10) injections and

GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

1  lumbar spine discography performed by Dr. Lawlor at the Black Hills Imaging and Surgery
2  Center. The claimed medical specials and treatment for which Ms. Graham, a nurse practitioner,
3  purported to prove up totaled $257,308.64. *See id.*, pp. 41-56. Plaintiff also utilized Ms. Graham,
4  over the objection of Defendant, to prove up approximately $30,000 worth of medical specials and
5  treatment for Heather and Hailee Matlock.

6  Ms. Graham's testimony lacked any foundation and credibility. First, Ms. Graham was
7  only qualified to testify as an expert regarding necessary home health care and any related home
8  health care costs. Ms. Graham was unequivocally not qualified to testify as an expert to prove up
9  Plaintiff's extensive medical treatment, which included multiple surgeries and diagnostic testing,
10 regardless of whether her testimony pertained to necessary treatment or the customary costs of the
11 same to a reasonable degree of medical probability. This items are outside the scope of Ms.
12 Graham's expertise. Indeed, Ms. Graham even testified that she was aware of no doctor or treating
13 physician who reviewed her work regarding future damages and could provide testimony to a
14 reasonable degree of medical probability that the alleged damages were related to the accident:

> Q. Okay. And ***has any doctor reviewed your report and testified to a reasonable degree of medical probability that your report is related to the accident?***
> A. ***Not that I am aware of.***

18 *See id.*, pp. 82-83 (emphasis added).

19 Second, Ms. Graham's testimony regarding the customary costs of Plaintiff's medical
20 treatment had zero credibility and lacked the necessary foundation for expert testimony. For
21 example, to prove up Plaintiff's future surgery, Ms. Graham claimed that all she had to do was
22 pick up the phone and call a surgical center to determine the amount of a cervical fusion:

> Q. And ***you know that from calling specific surgical centers and asking them exactly how much it will cost to perform a cervical lumbar fusion?***
> A. ***Yes.***
> Q. ***That's not from your own experience; just from calling these facilities?***
> A. Well, ***that is my experience***.
> Q. But you're testifying ***all you had to do is pick up the phone and call these facilities and ask how much they cost for the cervical fusion. Is that what you are saying?***
> A. ***That is correct.***

10

*See id.*, p. 72 (emphasis added).

In other words, Ms. Graham's purported "expert" testimony consisted of nothing more than allegedly making telephone calls to random medical providers. If this were a reliable and acceptable standard for expert testimony, a party could theoretically use anyone, regardless of background or experience, to testify as an expert to prove up necessary treatment or the customary costs of the same to a reasonable degree of medical probability. Under this scenario, Plaintiff could have called to the witness stand one of the children who observed a portion of trial in order to prove up Plaintiff's past and future damages.

Plaintiff has the burden of proving her case. Plaintiff cannot proceed to trial under the assumption that Defendant will stipulate to each piece of evidence Plaintiff may desire to present to the jury. In this case, Ms. Graham, a nurse practitioner, was not qualified to testify that Plaintiff's past medical damages were reasonable and necessary to a reasonable degree of medical probability. Although Plaintiff needed to bring only one treating physician (e.g., Dr. Lawlor or Dr. Maxwell) to trial to meet the appropriate standard, Plaintiff failed to do so.

Apparently, Plaintiff chose not to bring Dr. Lawlor or Dr. Maxwell because as treating physicians from South Dakota because they would have directly contradicted the testimony of Plaintiff's retained expert, Dr. McKenna, who testified that Plaintiff would need the million-dollar pain pump. Both Dr. Lawlor and Dr. Maxwell were adamantly against a pain pump for Plaintiff in this case. This testimony would have been difficult to reconcile with Dr. McKenna's testimony that Plaintiff was a "perfect candidate" for a pain pump. Therefore, it appears Plaintiff made the strategic decision to forgo proving past medical damages to a reasonable degree of medical probability in an attempt to cash in on the million-dollar pain pump. Only at the last minute did Plaintiff's counsel contact Ms. Graham in an attempt to back door Plaintiff's medical specials into evidence.

/ / /

/ / /

/ / /

11

### B.   PLAINTIFF'S PAST MEDICAL DAMAGES

Finally, in denying Defendant's motion for judgment as a matter of law on Plaintiff's past medical damages, the district court held that Ms. Graham had become "a witness who was not only [an] expert, but also a fact witness."  *See* Reporter's Partial Transcript of Jury Trial, April 2, 2009, Day 4, P.M. Session (erroneously listed as Day 3 on cover page of transcript), p. 46-52, a copy of which is attached hereto as **Exhibit "D."**

Under Nevada law, a personal injury plaintiff may recover only medical expenses that are "necessarily incurred as a result of the accident."  Nev. J.I. 10.02; *see also Hall v. SSF, Inc*., 112 Nev. 1384, 1390, 930 P.2d 94, 97 (1996) ("plaintiff must establish that future medical care expenses are reasonably necessary").  The necessity of medical treatment, moreover, must be established by competent expert medical testimony, as 'necessity' requires an opinion as to medical causation.  *See* Nev. J.I. 10.02 ("necessarily incurred *as a result of* the accident"), *Morsicato v. Sav-On Drug Stores, Inc*., 121 Nev. 153, 158, 111 P.3d 1112, 1116 (2005) (medical causation must be established by expert testimony to a reasonable degree of medical probability); *Brown v. Capanna*, 105 Nev. 665, 671-72, 782 P.2d 1299, 1304 (1989) (recognizing that testimony regarding causation must conform to the reasonable degree of medical probability standard).

By the close of Plaintiff's case in chief, Plaintiff simply did not prove her case.  Plaintiff was unable to prove to a reasonable degree of medical certainty that the medical bills that she incurred and claims to need in the future are related to the Greyhound Bus accident.  Linda Graham, R.N., a nurse from Minnesota, attempted to prove the reasonableness of Plaintiff's past and future medical costs as a ***fact witness***, however, this falls drastically short of the standard for admissibility.  An expert's testimony must be based on "scientific ... knowledge."  FED. R. EVID. 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579, 590, 113 S.Ct. 2786, 2795 (1993).

Simply stated, Ms. Graham's fact witness testimony does not meet the standard to submit evidence of Ms. Matlock's medical bills to the jury.  A nurse is not qualified to testify as to the necessity of medical care, as such an opinion implies an opinion of causation and diagnosis—both of which are beyond the expertise of a nurse.  *Elswick v. Nichols*, 144 F.Supp.2d 758, 766-67

12

(E.D.Ky. 2001) (nurse not qualified to testify as to whether the tortious conduct caused the patient's injury as that was a medical diagnosis that was outside of her area of expertise); *see also Yancy v. United Surgical Partners Intern., Inc.*, 170 S.W.3d 185, 191 (Tex. Ct. App. 2005) (As a matter of statutory regulation, nurses are prohibited from making any type of medical diagnosis, and therefore necessarily lack the requisite qualifications to testify on subjects that require making a medical diagnosis.). *See also Richardson & Holland v. Owen*, 148 Wash. 583, 592-593, 269 P. 838, 841 (Wash..1928) (if the physician disclaims any qualifications to testify as to the value of specialized services, such as those of a nurse, his or her opinion will be inadmissible).

It is improper to allow a fact witness to testify as to the reasonableness of medical costs in South Dakota for past and future medical treatment. If Defendant's motion for a directed verdict on this issue had been granted, Plaintiff would not have been able to prove her claim of negligence. Summary judgment is appropriate where appellants have no expert witnesses or designated documents providing competent evidence from which a jury could fairly estimate damages. *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808 (9th Cir.,1988).

### C.  PLAINTIFF'S FUTURE MEDICAL DAMAGES

The jury disregarded Plaintiff's request for future medical damages because there was no competent evidence to determine the amount of damages to award. A verdict awarding general damages that far exceed the special damages is excessive, and indicates that the jury acted out of passion or prejudice. *See, e.g., Buell-Wilson v. Ford Motor Co.*, 141 Cal. App. 4th 525, 552-55, 46 Cal. Rptr. 3d 147, 170-72; *Hill v. GTE Directories Sales Corp.*, 71 Wash. App. 132, 140. 856 P.2d 746, 751 (Ct. App. 1993) (noneconomic damages that significantly exceeded economic damages "clearly indicate[d] passion or prejudice, or an attempt to award punitive damages").

An award of future medical expenses must be supported by sufficient and competent evidence. *Yamaha Motor Co., U.S.A. v. Arnoult*, 114 Nev. 233, 249, 955 P.2d 661, 671 (1998); *Sawdey v. Schwenk*, 2 Wis.2d 532, 537, 87 N.W.2d 500, 503 (Wis.1958) (an award for future medical expenses cannot be upheld unless it is supported by expert medical testimony.); *see also Nunsuch ex rel. Nunsuch v. U.S.*, 221 F.Supp.2d 1027, 1035 (D.Ariz.,2001) ("[e]vidence of future

13

*LV 418,763,184v1 4-17-09*

medical expenses must be definite with respect to the duration, amount of treatment, and the cost in order to support an award of damages").

Here, there was no competent evidence to determine an award for future cervical or thoracic damages. *See* **Exhibit "D"** at 47-48. Not one expert testified at trial that Ms. Matlock will need, to a reasonable degree of medical certainty, a future cervical or thoracic medical as a result of the Greyhound Bus accident. Moreover, not one expert was able to competently testify to the reasonable costs of future medical treatment. *Id*. Ms. Graham simply testified that she "picked up the phone" and called hospitals in South Dakota to get the costs of a cervical surgery. *See* **Exhibit "C"** at 72. Moreover, Ms. Graham testified that no physician or medical expert for that matter, reviewed her report and stated to a reasonable degree of medical probability that her costs and projections for future health care for Ms. Matlock are related to the Greyhound accident. *Id*. at 82-83. If the district court had granted Defendant's motion for judgment as a matter of law on future damages, Plaintiff would not have been able to request for said damages in closings or on the jury verdict form, thus the jury likely would not have awarded damages for future pain and suffering or loss of enjoyment of life.

## III.   CONCLUSION

For the foregoing reasons, Defendant Greyhound Lines, Inc., respectfully requests that the district court grant its renewed motions for judgment as a matter of law pursuant to FRCP 50(b).

DATED this 17th day of April, 2009.

Respectfully submitted,

**GREENBERG TRAURIG, LLP**

By:   /s/ Joseph Gutierrez
PHILIP M. HYMANSON, ESQ.
Nevada Bar No. 2253
JOSEPH A. GUTIERREZ, ESQ.
Nevada Bar No. 9046
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
*Attorneys for Defendants*

14

*LV 418,763,184v1 4-17-09*

# CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2009, I served the foregoing **DEFENDANT'S DEFENDANT'S RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW** on:

>James Olson, Esq.
>Max E. Corrick, Esq.
>OLSON, CANNON, GORMLEY & DESRUISSEAUX
>9950 W. Cheyenne Avenue
>Las Vegas, Nevada 89129
>*Attorneys for Plaintiffs*

by causing a full, true, and correct copy thereof to be sent by the following indicated method or methods, on the date set forth below:

- ☐ by mailing in a sealed, first-class postage-prepaid envelope, addressed to the last-known office address of the attorney, and deposited with the United States Postal Service at Las Vegas, Nevada.
- ☐ by hand delivery.
- ☐ by sending via overnight courier in a sealed envelope.
- ☐ by faxing to the attorney at the fax number that is the last-known fax number.
- X by electronic mail to the last known e-mail address.

/s/ Megan Sheffield
_____
An employee of GREENBERG TRAURIG, LLP

**GREENBERG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002

*LV 418,763,184v1 4-17-09*