UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

DAWN MATLOCK, et al.,

    Plaintiffs,

v.

GREYHOUND LINES, INC., et al.,

    Defendants.

Case No. 2:04-CV-0051-KJD-GWF

**ORDER**

    Currently before the Court is Defendants' Motion for a New Trial (#245).[1] Plaintiff filed a Response in Opposition (#254) to which Defendants filed a Reply (#259). Also before the Court is Defendants' Renewed Motion for Judgment as a Matter of Law (#246). Plaintiff filed a Response in Opposition (#255), to which Defendants filed a Reply (#260). Additionally before the Court is Defendants' Motion to Vacate Verdict and Judgment (#262). Plaintiff filed a Response in Opposition (#269), to which Defendants filed a Reply (#270). The Court examines each Motion and issues its ruling together herein.

**I. Background**

    The instant action arises from a Greyhound bus accident that took place on U.S. Interstate 80 between Salt Lake City, Utah, and Reno, Nevada wherein Plaintiff and her two children, Hailee and

---

[1] Defendants Greyhound Lines, Inc. and Greyhound, Inc. are referred to jointly herein as "Defendants" or "Greyhound").

Heather, suffered injury. Trial revolving around Plaintiff's damages sustained in the accident commenced on March 30, 2009. On April 4, 2009, the jury returned a verdict assessing Plaintiff's damages as follows: (1) $13,478 for past medical care, treatment and services; (2) $0 for future medical care, treatment and services; (3) $500,000 for hedonic damages; (4) $500,000 for past mental, physical and emotional pain and suffering; (5) $250,000 for future mental, physical and emotional pain and suffering; and (6) $30,000 for past medical expenses for Hailee and Heather Matlock. Damages awarded totaled $1,293,478.

## II. Analysis

### A. Motion for New Trial

Defendant seeks that the Court grant a new trial pursuant to Fed. R. Civ. P. 59, or in the alternative, grant a remittitur. Fed. R. Civ. P. 59 provides that "the Court may, on motion, grant a new trial on all or some of the issues—and to any party—as follows . . . after jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). As evidenced by its text, "Rule 59 does not specify the grounds on which a motion for a new trial may be granted. Rather, the court is bound by those grounds that have been historically recognized. Historically recognized grounds include, but are not limited to, claims that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving." Molski v. M.J. Cable, Inc., 481 F.3d 724, 729 (9th Cir. 2007) (citations and internal quotation marks omitted). If a new trial is not granted, remittitur is appropriate when awards are "unreasonable given the evidence" or "so excessive as to suggest the intrusion of passion and prejudice upon the jury's deliberations." See Harris v. Zee, 486 P.2d 490, 491–92 (Nev. 1971).

Here, Greyhound avers that a new trial should be granted because: (1) Plaintiff failed to provide the Court with an evidentiary basis to properly determine the amount of damages, resulting in a fundamentally defective trial; (2) that the jury's award of hedonic damages is unsupported by the evidence and constitutes an excessive double recovery; (3) that the jury verdict is inconsistent and

unsupported by the evidence; (4) that the Court's medical malpractice and eggshell plaintiff jury instructions were erroneous; and (5) that the Court should have allowed Defendants to present evidence regarding the issue of liens to the jury.

**1. Evidentiary basis**

Greyhound claims that Plaintiff's witness, Linda Graham, R.N., ("Graham") was not qualified to prove up the majority of Plaintiff's medical treatment and expenses. Specifically, Greyhound avers that Plaintiff failed to provide the appropriate foundation to support an award for past medical damages through Graham's testimony, and that Graham was inappropriately allowed to prove up medical records during trial which she admitted she had not reviewed previously. Additionally, Defendant avers that Plaintiff violated procedural notification rules by "exponentially expand[ing]" the scope of Graham's testimony just ten minutes before trial "to include an opinion on the reasonableness of the costs of Plaintiff's complete past medical expenses," and by producing a supplemental expert report just weeks prior to trial. (#259 at 4.)

At trial, the Court allowed extensive voir dire of Ms. Graham after which it concluded that Graham was qualified to render an expert opinion in the areas of home health care and the costs of medical services that she had researched. (#254 at 4.) Additionally, at trial, and upon objection by Greyhound, the Court found that "any changes in [Ms. Graham's] expert report were not prejudicial" as said disclosures "were not necessary for her fact witness testimony," and that "any prejudicial effect was outweighed by the economy of having one witness testify to the entirety of the issue of whether the medical expenses were customary." (#254 at 4–5; #245 Ex. C. 21:21–25, 52:1–13.) Additionally, at trial, Greyhound did not object to the Court's finding that Graham was qualified to render an expert opinion in the areas of home health care and the costs of medical services that she had researched.

Greyhound also avers that a treating physician, other than Dr. McKenna, was required to substantiate future medical loss as to Plaintiff's cervical and thoracic damages. Greyhound made this objection at trial, and was denied when the Court found that sufficient evidence had been presented

that a reasonable jury could return a verdict on the items that would be substantiated. (Id. Ex. D 48:4–20.) Additionally, the Court noted that Dr. McKenna had testified as to a general cost, and that the location of treatment would not make a substantial difference, as Ms. Graham had testified regarding price comparisons. The Court maintains its previous ruling. Defendant has presented no new evidence or argument regarding future damages that merit a new trial or remittitur.

**2. Hedonic Damages**

Defendant additionally avers that the jury's award of $500,000 in hedonic damages for disability, disfigurement and loss of enjoyment of life was unsupported by the evidence, excessive, and duplicative of the past and future pain and suffering awards. Defendant argues that hedonic damages are a component of pain and suffering and are not a separate and distinct compensatory award, and that expert testimony is required to support a claim for hedonic damages. The Court does not agree.

Hedonic damages are "monetary remedies awarded to compensate injured persons for their noneconomic loss of life's pleasures or the loss of enjoyment of life." Banks ex rel. Banks v. Sunrise Hosp., 102 P.3d 52, 61–64 (2004). In Banks the Nevada Supreme Court found that expert testimony is not required, but may be utilized to assist a jury in making its determination of hedonic damages. Additionally, the Banks court found that awards for hedonic damages are typically not permitted separate and apart from pain and suffering damages. As in Banks however, the award here was not prejudicial "because the jury could have easily added the value of the hedonic loss to the pain and suffering award." Banks, 102 P.3d at 839.

**3. Verdict**

Greyhound additionally avers that the Court should grant a new trial because the jury verdict is "wholly inconsistent and unsupported by the evidence presented at trial." (#245 at 6) Greyhound claims that the verdict "was punitive in nature and clearly reflected passion, prejudice and corruption that warrants a new trial" (id. at 8), because the award "totaled over 92 times the amount of medical expenses that the jury found to be causally related to the bus accident." (#259 at 8.) Plaintiff, in

4

opposition, avers that Greyhound is now seeking to "improperly invade the province of the jury" regarding Ms. Matlock's pain and loss of enjoyment of life, (#254 at 13) and that the evidence and testimony presented at trial "clearly established" that Plaintiff suffered and continues to suffer from pain directly related to the bus accident. (#254 at 12.)

It is well understood that "[i]n actions for damages in which the law provides no legal rule of measurement it is the special province of the jury to determine the amount [of damages] that ought to be allowed." Stackiewicz v. Nissan Motor Corp. in U.S.A., 686 P.2d 925, 932 (Nev. 1984). A court may not reverse a case, or grant a new trial on the ground that a verdict is excessive "unless it is so flagrantly improper as to indicate passion, prejudice or corruption in the jury." Id. citing Forrester v. Southern Pacific Co., 134 P.753, 768 (Nev. 1913). Additionally, a determination of damages for pain and suffering is "wholly subjective", and by nature falls squarely within the province of the jury. See Stackiewicz, 686 P.2d at 932.

At the trial in this matter, evidence was presented to support the jury's award of damages for Plaintiff's pain and suffering. Among other testimony, Dr. Brett Lawlor opined that Ms. Matlock's diagnosis of cervical musculoligamentous injury, mechanical low back pain and possible discogenic features, left shoulder pain, and patello-femoral knee pain were permanent. (#254 at 12, citing Ex. 2 pg. 28 lines 22–25; pg. 29 lines 1–25.) Dr. Lawlor also stated his opinion that Ms. Matlock continued to have pain that decreased her ability to tolerate normal physical activity. (Id. at pg. 31: 24–25; 31:1–2.) Additionally, Greyhound's retained expert, Dr. John S. Thalgott, stated his opinion that Plaintiff had suffered a significant injury with probable internal disc disruption of the lumbar spine with a chronic pain pattern and subsequent lumbar reconstructive surgery. (#254 at 12; Ex 5 pg. 16:1–4.) Moreover, Dr. David Schmidt testified that the accident caused Plaintiff to suffer a chronic pain condition that "affects her ability to interact with her children," requires her to sleep more, and causes her not to feel well "most of the time." (#254 at 13; #245 Ex. A. pg 126:22–25; 127: 1–17.)

Though Greyhound argues that the jury's award is excessive due to its size in comparison to the amount for past medical damages, "the mere fact that a verdict is large is not in itself 'conclusive that it is the result of passion or prejudice." Stackiewicz, 686 P.2d at 932 (quoting Beccard v. Nevada National Bank, 657 P.2d 1154, 1156 (Nev. 1983)). Here, the Court does not find the jury award unusually high or improper so as to suggest jury passion, prejudice, or corruption. Rather, the evidence presented at trial demonstrated that Plaintiff's quality of life was impacted substantially by the bus accident. Plaintiff claims to have endured years of pain, back surgery, and constant and continuing discomfort. The jury award was far less than that requested or recommended by Plaintiff, thus negating any inference of passion or prejudice.

**4. Jury Instructions**

Greyhound additionally avers that the "medical malpractice" and "eggshell plaintiff" jury instructions given by the Court were erroneous, meriting a new trial. The jury instruction regarding medical malpractice that was issued to the jury stated:

> The law requires that if you find that the Greyhound Defendants' negligence caused the Plaintiff's original injury, that you must also hold the Greyhound Defendants liable for any subsequent medical services made necessary by that original injury and any further injuries or damages Plaintiff may have suffered as a result of those medical services, even if those services were negligent. The law regards the act of the original wrongdoer as a proximate cause of the damages flowing from the subsequent medical treatment and holds him liable therefore.

Jury Instruction No. 22 (#229.)

Specifically, Greyhound objects to the issuance of the instruction, arguing that Plaintiff did not present any evidence demonstrating that any physician deviated from the standard of care in this case, that any medical treatment was performed in a negligent manner, or that Greyhound could in any way be liable for treatment that Ms. Matlock received that was not required. Greyhound made objection to this instruction at the close of Plaintiff's rebuttal testimony, and now claims that "the Court initially granted Defendant's (sic) request to remove the medical malpractice instruction . . .

[yet] changed it's ruling". (#245 at 9.) Greyhound is incorrect. The Court never granted Greyhound's request to have the medical malpractice instruction removed. Rather, the Court denied Greyhound's request upon finding that the instruction had to do with responsibility for a possible breach of the standard of medical care, and therefore, that it was an appropriate instruction to give to the jury. Greyhound's argument that Plaintiff failed to provide sufficient evidence of malpractice or negligence does not indicate that the instruction was erroneous or inapplicable. To the contrary, the Court maintains its finding that the medical malpractice instruction was appropriate to promote jury understanding in this case.

Greyhound also argues that the "eggshell plaintiff" jury instruction was erroneous. The eggshell plaintiff jury instruction stated:

> The law provides that a wrongdoer will take his victim as he finds him, and, if the victim is particularly susceptible to experiencing traumatic injuries or pain as a result of a preexisting physical or mental condition, then the defendant will still be responsible for making the plaintiff whole. A tortfeasor will be held responsible where the effect of its negligence is to aggravate a preexisting condition or disease. It is no defense to an award of full damages that the plaintiff's injury was amplified by the preexisting condition for which the defendant was not responsible.

Jury Instruction No. 23 (#229.)

Greyhound argues that neither party presented evidence that the bus accident aggravated a preexisting condition, and that the instruction is inconsistent with applicable law. Specifically, Greyhound avers that the instruction should have stated that "a defendant is not liable for the pre-existing condition itself", incorrectly provided for "an award of full damages", and was not warranted because Greyhound never argued that Plaintiff had a pre-existing condition or prior psychological issue that was aggravated. (#245 at 11; 259 at 9.)

Defendants' construal of the jury instruction is overreaching and incorrect. The instruction clearly provides that a tortfeasor may be held responsible "where the effect of its negligence is to aggravate a preexisting condition," and in no way implies that the tortfeasor is liable for the pre-

existing condition itself. (#229.) Greyhound avers that the use of the term "full-damages" in the instruction somehow implies that a defendant is liable for the pre-existing condition. To the contrary, the Court finds that the instruction properly advises the jury that a tortfeasor or wrongdoer "takes his victim as he finds him" and is liable to make a victim whole in spite of a pre-existing condition, and regardless of foreseeability. (See Gibson v. County of Washoe, Nev., 290 F.3d 1175 (9th Cir. 2002). Accordingly, Greyhound's argument is denied.

**5. Presentation of Evidence**

Greyhound argues that the Court committed substantial error "when it did not allow Defendant to cross-examine Plaintiff about her pre-settlement liens after Plaintiff clearly opened the door on this issue." (#245 at 13.) Prior to trial, the Court granted a Motion in Limine (#130) filed by Plaintiff, seeking to exclude any reference to liens, loans, or pre-settlement advances obtained by Ms. Matlock. The Court admonished however, that if Plaintiff opened the door on this issue during trial, then evidence of liens and other financial records may potentially be admitted. (See #130; 215).

At trial, during Plaintiff's cross-examination of Dr. Thomas Dunn, ("Dunn") Plaintiff questioned Dr. Dunn whether his patients ever failed to return for treatment "because they simply can't afford the services." (#245 Ex. A at 97.) At sidebar following this statement, the Court advised Plaintiff's counsel that he had opened the door regarding financial information, and that he had gone over the time allotted for the witness. The Court then admonished Plaintiff's counsel to finish up with the witness or Defendants' counsel would be permitted to "bring all of the financial information in." (Id.) Subsequently, the Court sustained Greyhound's objection to the questioning of Dr. Dunn regarding a patient's ability to afford treatment, and stated that it would instruct the jury "to disregard any testimony about financial issues." (#245 Ex. A at 108.) At that time, Defendant Greyhound made no proffer that it wished to solicit testimony from any witness in rebuttal, or that the Court's decision to instruct the jury was inadequate. Now, Greyhound avers that the Court's instruction to the jury to disregard financial information was insufficient, and that Greyhound should have been

8

allowed to re-call Ms. Matlock to the stand to address financial issues concerning her non-compliance with medical care. The Court does not agree.

Fed. R. Civ. P. 61 sets forth the standard for harmless error, stating that "[n]o error in either the admission or the exclusion of evidence . . . is ground for granting a new trial or for vacating, modifying, or otherwise disturbing a judgment or order," and that "[a]t every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights." The burden of proving that substantial rights were affected by an erroneous ruling lies with the party asserting the error. Here, Greyhound has failed to demonstrate that its substantial rights were affected by the Court's ruling. Rather, the Court's admonition to counsel at sidebar regarding the issue, the sustaining of Greyhound's objection, and the subsequent instruction that the jury disregard any reference to financial information appropriately and effectively remedied any potential for error.

**B. Defendants' Renewed Motion for Judgment as a Matter of Law**

Fed. R. Civ. P. 50(a) provides:

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1)(A)–(B)

On April 2, 2009, the Court denied Defendants' Motions for Judgment as a Matter of Law on Plaintiff's claims for past and future damages as well as the damages claimed on behalf of Plaintiff's children under Rule 59(a). As stated above, the jury returned its verdict on April 4, 2009, and here, Defendant renews its Motions pursuant to Rule 50(b). Defendant avers that Plaintiff failed to put forth a legally sufficient evidentiary basis to sustain the award of damages in the verdict. As it argued in its Motion for New Trial, Defendant here too avers that Linda Graham was not qualified to testify regarding Plaintiff's past damages and prior medical treatment, and that Graham's testimony

lacked foundation and credibility.  Defendant additionally avers that Plaintiff failed to prove that the past and future medical expenses are causally related to the Greyhound bus accident because Linda Graham's fact witness testimony "does not meet the standard to submit evidence of Ms. Matlock's medical bills to the jury."  (#246 at 12.)

As stated above, the Court has found that during trial, Plaintiff set forth a legally sufficient basis to support the damages awarded.  Specifically, the Court found that Linda Graham was qualified to render expert testimony in the areas of home health care, and testimony regarding the costs of medical services that she had researched.

Greyhound now argues that Graham is not qualified to testify as to the necessity of medical care, which implies an opinion of causation and diagnosis, and requires the expert testimony of a physician.  Greyhound avers that Graham's fact witness testimony did not meet the standard to submit evidence of Ms. Matlock's medical bills to the jury, and that "if Greyhound's motion for a directed verdict . . . had been granted, Plaintiff would not have been able to prove that her damages were the result of the accident."  (#260 at 4.)  The Court disagrees.  At trial, Greyhound contested that a physician was required to prove that the medical expenses Matlock incurred were customary.  The Court rejected Greyhound's argument, and found that Graham's testimony was sufficient to introduce proof of medical expenses, "in that she testified that the charges were customary in the area in which they were incurred . . . that she had done her research" and that the testimony of a medical doctor was not necessary "when the base information would be the same, that is, what is based on personal knowledge to be customary and reasonable in the area."  (#246 Ex. D pg. 46:21–25, 47:1–6.)  The Court maintains its previous ruling, and finds that Defendant has failed to demonstrate that the jury in this matter did not have a sufficient evidentiary basis to support its award of damages to Plaintiff.

Accordingly, Defendants' Renewed Motion for Judgment as a Matter of Law is denied.

**C. Motion to Vacate**

Defendants additionally seek that the Court vacate the verdict and judgment pursuant to Fed. R. Civ. P. 60. Rule 60 provides that the Court may "relieve a party or its legal representative from a final judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). "To constitute fraud on the court, the alleged misconduct must 'harm the integrity of the judicial process.'" In re Levander, 180 F.3d 1114, 1119 (9th Cir. 1999)(quoting Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989).

A motion to vacate brought under Rule 60(b)(3) is within the sound discretion of the trial court. See Title v. United States, 263 F.2d 28 (9th Cir. 1959). The Ninth Circuit has noted that Rule 60(b) is remedial in nature and must be construed liberally. See Atchison, T & S.F. Ry. Co. v. Barrett, 246 F.2d 846, 849 (9th Cir. 1957). Although construed liberally, it is the burden of the moving party to prove the existence of the alleged fraud by "clear and convincing evidence", such that said fraud prevented the losing party from "fully and fairly presenting his case or defense. See id. (citing Assman v. Fleming, 159 F.2d 332,336 (8th Cir. 1947) and Independence Lead Mines v. Kingsbury, 175 F.2d 983, 988 (9th Cir. 1949).

Here, Defendants aver that the verdict and judgment in this action should be vacated because Jay Matlock has made allegations of attorney misconduct and witness tampering that affected Greyhound's ability to present its case at trial. (#262.) Specifically, Greyhound avers that on April 30, 2009, and May 1, 2009, Jay Matlock left four voicemail messages respectively, at the office of Greyhound's counsel regarding potentially inappropriate conduct by Jay Matlock's former counsel. Subsequently, Jay Matlock allegedly told Greyhound's counsel that he had been advised by his previous attorney to lie regarding knowledge of pre-existing and subsequent accidents of Ms. Matlock out of fear that said information could "contaminate the lawsuit" (#262 at 7.) Greyhound

avers that it was prevented from fully and fairly presenting its case at trial because Jay Matlock was told not to testify truthfully.

The parties argue whether the standard for establishing fraud sufficient to merit relief under Rule 60(b)(3) falls within the clear and convincing evidence standard, or a preponderance of the evidence standard. Here however, neither standard has been met. Greyhound has presented no admissible evidence, affidavit, or sworn testimony from Jay Matlock regarding the veracity of the allegations of fraud contained in its Motion. Rather, Greyhound attaches an exhibit of a cd "to be delivered by hand" of the alleged recordings of Jay Matlock's voicemail messages to Greyhound's counsel, and an affidavit of Plaintiff's counsel regarding the statements allegedly made by Jay Matlock in said voicemail messages and during a subsequent conversation. Such self-serving allegations, without more, however, do not meet evidentiary standards, and cannot establish the fraud averred in Defendants' Motion sufficient to merit relief under Rule 60(b). Therefore, Greyhound's Motion to Vacate fails.

### III. Conclusion

Accordingly, **IT IS HEREBY ORDERED** that Defendants' Motion for a New Trial (#245) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Renewed Motion for Judgment as a Matter of Law (#246) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Vacate Verdict and Judgment (#262) is **DENIED**.

DATED this 10th day of August 2010.

_____
Kent J. Dawson
United States District Judge